IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GLENDEL A. RIDER,

                    Plaintiff,

Vs.                                                    No. 05-3475-SAC

ROGER WERHOLTZ, et al,

                    Defendants.


**MEMORANDUM AND ORDER**

        This civil rights complaint filed by a prisoner pursuant to 42 U.S.C. § 1983 alleges

violations of his Eighth Amendment rights, his Fifth Amendment right to due process,

and his Fourteenth Amendment right to due process and equal protection. The case

comes before the court on  plaintiff's motion to reconsider a prior order, plaintiff's

motions to compel, and defendants' motion to dismiss plaintiff's complaint for failure to

state a claim.[1]

**Facts**

        Highly summarized, plaintiff contends that defendants violated his constitutional

rights by failing to protect him from unprovoked assaults by other prisoners. According

to his pleadings, plaintiff, an elderly disabled person, was brutally attacked by other

inmates on December 25, 2004, while sleeping. The attack occurred in the medical pod

---

        [1]Defendants' motion and memorandum make no mention of plaintiff's Fifth or
Fourteenth Amendment claims, as set forth in Count II, but address solely plaintiff's
Eighth Amendment claims contained in Count I.

where plaintiff resided at the time, and was done by unidentified inmates not residing in the medical pod. The unnamed assailants beat plaintiff and stole his belongings, then left the pod. Plaintiff suffered physical and mental injuries from the beating. Plaintiff alleges that the officers on duty (defendants Brown and Ferber) permitted the assailants to enter and exit his pod by unlocking its entrance door, or failed to properly monitor the movement of prisoners through the doors, or otherwise permitted the assailants' entrance and exit in violation of prison policy or regulations.

Approximately three days later, plaintiff filed a property claim and attached to it a lengthy and detailed account of the December 25th incident, including the beating. Plaintiff gave the claim to his Unit Team Counselor, defendant Peavler, who said she would notify defendant Laun. The claims officer turned the report over to Intelligence and Investigations Division for investigation. Plaintiff's amended complaint alleges that this document put defendants Peavler and Laun on notice of an excessive risk to plaintiff's safety, and that they failed to transfer plaintiff after receiving it. Dk.1, Exh. B.

On January 14, 2005, plaintiff filed a grievance which complained he was "severely beaten in his room by two inmates who did not reside in [his]Unit." Dk. 1, Exh. A. Plaintiff attached a two-page document detailing the manner in which he believed officers had been remiss in failing to protect his safety, and requesting "out- of- state transfer" for safety reasons. *Id.*

On January 24, 2005, plaintiff was attacked in his room a second time by assailants who threatened to kill him. Plaintiff suffered physical injuries from the beating, and was treated at the medium medical clinic, where photographs documented his

2

injuries. Plaintiff alleges that the officers on duty, later determined to be defendants Bulmer and McKown, permitted the assailants to enter and exit his room in violation of prison policy or regulations.

Plaintiff was placed in administrative segregation that day, pending investigation for protective custody. While there, plaintiff completed an inmate request form addressed to "mental health," dated February 6, 2005, to which he attached six pages of detailed chronological narrative of events beginning with his placement in the medical pod approximately two and one-half months prior to the first attack.  Dk. 1, Exh.F.

On February 17, 2005, after approximately two weeks in administrative segregation, plaintiff was placed in protective custody where his Unit Team counselor was defendant Holthaus, and his Unit Team Manager was defendant Tinder.  Plaintiff filed grievances about the conditions in protective custody, stating that he did not feel secure in protective custody due to "serious and complex problems" not alleged to be related to the prior assaults.  These problems included inmates who were given control over other inmates within the unit, who had access to confidential information, and who threatened him with violence. Dk. 1, Exh. G.

Plaintiff was subsequently transferred to Ellsworth but was not placed in the IFI program, in which defendants Holthaus, Peavler, and Tinder had led plaintiff to believe he would be placed. He subsequently brought suit against the officers named above, as well as against David R. McKune, the Warden of Lansing Correctional Facility, and Roger Werholtz, the Secretary of Corrections for the Kansas Department of Correction.

**MOTION TO RECONSIDER**

Plaintiff moves the court to reconsider its order dated January 16, 2008 to correct clear error and prevent manifest injustice. (Dk. 56) This motion alleges that the court should have sustained plaintiff's objection to defendants' untimely filing of its memorandum in support of its motion to dismiss, that the clerk's office provides greater assistance to defendants

than it does to him, that the court erroneously ordered plaintiff to file a second response to defendants' motion to dismiss, that the court erred in denying plaintiff's motion for default judgment, and that defendants should be ordered to respond to or to defend plaintiff's claims.

The Federal Rules of Civil Procedure do not provide for a "motion to reconsider." *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir.1997). The court ordinarily construes such a filing as either a Rule 59(e) motion or a Rule 60(b) motion, depending on the timing of the filing of the motion. *Id.* Here, however, no judgment has been entered by virtue of the court's prior order. Nonetheless, the court has reviewed its prior rulings, and finds no reason to alter or amend them in any respect.

**MOTION TO DISMISS**

**Dismissal standard**

"[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir.2001). The court accepts all well-pleaded allegations, taken in the light most favorable to the plaintiff, as true. *E.F.W.*

4

*v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1305 (10th Cir.2001). The court then decides whether such allegations establish that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* The court does not, however, accept as true conclusory allegations unsupported by factual allegations. *Id.* at 1306.

Pro se complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007). *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir.2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170,1173-74 (10th Cir.1997) (quotations and citations omitted). The court should not be the pro se litigant's advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level"  and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929, ---- - ---- (2007) 1965. *See generally Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.2007) (discussing and applying *Twombly*).[2] Under this standard, "the mere metaphysical

---

[2]Plaintiff contends that *Twombly* is inapplicable to his claims, but the Tenth Circuit would disagree. *See e.g.*, *Brown v. Narvais,* 2008 WL 442398, 2 (10th Cir. Feb. 19, 2008) (applying *Twombly* in context of prisoner's claim that guard knowingly exposed him to a risk of serious bodily danger from other inmates in violation of the Eighth Amendment).

possibility that some plaintiff could prove some set of facts in support of the pleaded

claims is insufficient; the complaint must give the court reason to believe that this

plaintiff has a reasonable likelihood of mustering factual support for these claims."

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007). The

allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just

speculatively) has a claim for relief. *Robbins v. Oklahoma*, __ F.3d __, 2008 WL

747132, 3 (10th Cir. 2008). *See Ellibee v. Fox*, 244 Fed.Appx. 839, 843, 2007 WL

1776347, *3 (10th Cir.2007).

> "Plausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible." *Id.* at 1974.

 *Robbins*, 2008 WL 747132, 3 (10th Cir. 2008)."

"[C]omplaints in § 1983 cases against individual government actors pose a

greater likelihood of failures in notice and plausibility because they typically include

complex claims against multiple defendants." *Robbins*,  2008 WL 747132 at * 4.

> In § 1983 cases, defendants often include the government agency and a number
> of government actors sued in their individual capacities. Therefore it is
> particularly important in such circumstances that the complaint make clear
> exactly who is alleged to have done what to whom, to provide each individual
> with fair notice as to the basis of the claims against him or her, as distinguished
> from collective allegations against the state. *See Twombly*, 127 S.Ct. at 1970-71
> n. 10.

*Robbins*, 2008 WL 747132 at * 4.

**Deliberate indifference**

The Eighth Amendment imposes on prison officials a duty to protect prisoners

from violence at the hands of other inmates. *See Ramos v. Lamm*, 639 F.2d 559 (10th

6

Cir.1980), *cert. denied*, 450 U.S. 1041 (1981). Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Berry v. City of Muskogee*, 900 F.2d 1489, 1494-95 (10th Cir.1990). The failure of a prison official to protect an inmate from attacks by other inmates rises to the level of an Eighth Amendment violation only if the evidence shows the defendants acted with "wanton or obdurate disregard for or deliberate indifference to" the protection of prisoners' lives. *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir.1988); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir.1992).

Deliberate indifference is a higher standard than either simple negligence or heightened negligence. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-10, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir.2006). Negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment. *Farmer*, 511 U.S. at 835. The Supreme Court has expressly rejected the suggestion that a prison official violates the Eighth Amendment when he might have known or should have known of a risk of harm. *See Farmer*, 511 U.S. at 837-38, 114 S.Ct. 1970. *See Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir.2005).

The test for deliberate indifference claims under the Eighth Amendment is well established in the Tenth Circuit.

The test for a "deliberate indifference" claim under the Eighth Amendment has "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000). The objective component of the test is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual

7

Punishment Clause. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). The subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.' " *Sealock*, 218 F.3d at 1209 (quoting Farmer, 511 U.S. at 837, 114 S.Ct. 1970).

*Kikumura* v. Osagie, 461 F.3d 1269, 1291 (10th Cir.2006), *overruled on other grounds by Robbins, supra*.

**Seriousness of harm**

The objective component of plaintiff's deliberate indifference claim is squarely met for purposes of a motion to dismiss. According to his pleadings, plaintiff was brutally attacked while sleeping in the medical pod, causing him to bleed from head trauma. A medical emergency was called and a nurse took plaintiff in a wheel chair to the medium clinic for treatment. Photographs were taken which document the extent of plaintiff's injuries. Plaintiff alleges that a second attack was similar in nature, as were the injuries he suffered. Attachments to plaintiff's complaint include defendants' documentation showing that after the second attack plaintiff was "placed in the max clinic after being observed with injuries that would indicate he was assaulted."  Dk. 1, Exh. D. The court finds that plaintiff's alleged injuries are plausibly 'sufficiently serious' to constitute a deprivation of constitutional dimension," *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir.), *cert. denied*, 127 S.Ct. 131 (2006), and to meet the purpose of limiting claims "to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir.2005).

**Knowledge of risk**

Whether plaintiff has met the subjective component is a closer question.

8

> The subjective component of a deliberate indifference claim requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It is not enough to allege that prison officials failed "to alleviate a significant risk that [they] should have perceived but did not." *Id.* To show "the requisite deliberate indifference," [the plaintiff] "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.' " *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970).

*Kikumura*, 461 F.3d at 1293.

> The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998).

*Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

A plaintiff may prove that the defendants had actual knowledge of a substantial risk "in the usual ways," according to the Supreme Court. *See Farmer,* 511 U.S. at 842. That is, a factfinder may infer actual knowledge through circumstantial evidence, or "may conclude a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* The court examines the plaintiff's specific claims against the defendants in light of the above standards.

**Defendants Brown and Ferber**

These defendants are the two guards who allegedly permitted entry into plaintiff's pod of the assailants who committed the first attack. Plaintiff does not allege that any defendant, prior to plaintiff's first attack, had any knowledge or reason to know that plaintiff faced a substantial risk of harm. In fact, plaintiff himself did not anticipate such an event and appears to have been unaware of a risk of serious harm. Attachments to plaintiff's complaint confirm that plaintiff "never went to Unit Team to complain about

9

[the assailants] pressuring [him] because [he] thought that would only make things worse." Dk. 1, Exh. F, p. 4.  Accordingly, no claim of failure to protect based upon the first attack is actionable.

Additionally, no allegation is made that the guards permitted the assailants entry into plaintiff's Pod knowing that those particular inmates posed "a pervasive risk of harm" to other inmates generally, or knowing that plaintiff had been specifically targeted by anyone. Plaintiff's allegations constitute claims that guards were negligent in permitting other inmates access to his pod. This is insufficient to raise the possibility of deliberate indifference to plaintiff's safety. *See Goka v. Bobbitt*, 862 F.2d 646, 647-48 (7th Cir.1988). Accordingly, plaintiff's claims against these two defendants must be dismissed.[3]

**Defendants Peavler and Laun**

### Knowledge of risk

Plaintiff claims that other defendants knew he faced a substantial risk of harm after the first attack, but disregarded it, resulting in his second attack. Plaintiff contends other defendants were put on notice of an obvious risk to his safety by the following: 1) his first attack; 2) his grievance; 3) his property loss claim; 4) his "many pleas for help"; 5) the contraband planted in his room; 6) a pattern of widespread violent beatings in the prison; and (7) their permitting unassigned inmates to enter a restricted area without supervision, in violation of KAR 44-12-503.

Although some of these factors are clearly insufficient to show defendants' actual

---

[3]Plaintiff appears to concede as much in his response. *See* Dk. 65, p. 3.

knowledge, some notice to some defendants prior to plaintiff's second attack is shown

via plaintiff's detailed property loss claim, which, in addition to multiple other assertions,

states:

> The ones that might have told the truth were afraid to speak up. I can't blame them. I'm afraid as well. I'm too old to defend myself from hostile attacks from younger and stronger inmates. And this is common place with the young gang bangers in this facility. I like all of the fella's (sic) in this Pod, I don't like some of the behavior of them because it is disruptive and leads to violence. I am concerned of Robinson and Green and what they might come up with next. They expected me to check in so they would be rid of me and they could continue on the way they want it in this Pod. I don't think this administration will tolerate their behavior now that they have been revealed. I only hope and pray that the administration handles this situation in a way that will protect me. Having Robinson and Green sign PC waivers at this point would only cause another assault on me. I hope this is clear because I sense that Robinson wants me gone so badly now that he will go back to the gang bangers and try to set up another attack on me if he has the opportunity, or back stab like he's told others he would do. I need to feel reasonably safe in my assigned Pod and room...

Dk. 1, Exh. B, attachment.

Plaintiff allegedly gave this form to his Unit Team Counselor, defendant Peavler,

who said she would notify defendant Laun. The claims officer turned the report over to

Intelligence and Investigations Division for investigation, and it indicates that it was

received by the Warden's office. These allegations, coupled with those establishing the

first attack and the extent of plaintiff's injuries, are arguably sufficient to show for

purposes of a motion to dismiss that defendants Peavler and Laun knew plaintiff faced a

substantial risk of harm at the hands of Robinson and Green.[4]

Defendants contend that plaintiff has not shown that his second attack was

committed by the same assailants as the first and that this missing link compels

---

[4]This assumes, for purposes of this motion, that these defendants actually read the property claim form.

dismissal. See *Ortiz v. Fernald,* 102 Fed.Appx. 371, 373, 2004 WL 1372935, 1 (5th Cir.2004). But a fair reading of the attachments to plaintiff's complaint and the fair inferences drawn from them in the light most favorable to plaintiff shows plaintiff's assertions that the two attacks were "set up" by the same identified person who directed the gang bangers to harm plaintiff, and that plaintiff reasonably feared another attack. Without implying any opinion regarding the ultimate determination of this case, the court finds that the complaint sufficiently pleads knowledge of risk by defendants Peavler and Laun.

Denial of grievances alone is insufficient to establish personal participation in the alleged constitutional violations. *Larson v. Meek ,* 240 Fed.Appx. 777, 780, 2007 WL 1705086, *3 (10th Cir.2007) (affirming dismissal of complaint). To the extent plaintiff's complaint may be read to make such a claim, the court finds it not actionable.[5] Nonetheless, to the extent that defendant's grievance, property claim, or other complaint put defendant Peavler or Laun on notice of a substantial risk to plaintiff's safety posed by another inmate, that defendant remains subject to potential liability for any failure to act reasonably in response to that notice. *See Farmer*, 511 U.S. at 842 (holding that prisoner need not show that a official failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.)

**Disregard of risk**

---

[5]Plaintiff's response confirms that he is not making a separate claim based on the denial of grievances. *See* Dk. 65, p.7,10, 18.

The court next examines whether plaintiff has adequately pleaded that defendants disregarded a substantial risk of harm to plaintiff by failing to take reasonable measures to abate it. Plaintiff alleges that despite his injuries and complaints after the first attack, no action was taken until after the second attack. However, attachments to plaintiff's complaint show that prison officials offered to move plaintiff soon after the first attack. *See* Dk. 1, Exh. F, p. 5 (plaintiff's mental health statement, noting officer's statement to plaintiff on December 29, 2004 that plaintiff did not need the requested alarm because they were going to move plaintiff out, and that it would be easier to move one person than two or more persons, to which plaintiff responded that he "had done nothing wrong and should not have to be moved"). They also show that plaintiff declined that offer. *See id*; Dk. 1, Exh. F, p. 7 (plaintiff's statement that he is troubled by the thought of going into protective custody and his explanation why).

Even where the defendants actually knew of a substantial risk of serious harm to the plaintiff, an "offer of protective custody "tends to refute a claim that prison staff acted with deliberate indifference to any such risk." *Welch v. Pennsylvania Dept. of Corrections*, 2008 WL 723966, 2 (3d Cir. 2008). Accordingly, courts have dismissed or affirmed dismissals of Eighth Amendment failure to protect claims based upon inmates' declined offers of protective custody. *See e.g., Zatler v. Wainwright*, 802 F.2d 397, 403 (11th Cir.1986) (affirming dismissal of failure to protect claim, finding plaintiff could not establish prison official's deliberate indifference where plaintiff was offered protective custody even though officials discouraged inmates from seeking protective custody and conditions were harsh); *Nolen v. Goord*, 218 Fed.Appx. 41, 43, 2007 WL 627504, 1 (2d

13

Cir. 2007) (affirming dismissal of failure to protect claim where plaintiff failed to present evidence that offer of protective custody before assault was not a reasonable response to the risk presented); *Hall v. Arnold*, 2007 WL 3399745, 4 (E.D.Ky. 2007) (dismissing case pursuant to sua sponte screening where inmate repeatedly refused to accept reasonable means of protecting herself through protective custody).

Offering plaintiff protective custody immediately after the first attack was a reasonable response to the risk, rendering defendants "free from liability ... even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *Barney v. Pulsipher*,143 F.3d 1299, 1311, n. 12 (10th Cir.1998). *See e.g., Abu-Fakher v. Bode*, 175 Fed.Appx. 179, 184, 2006 WL 650671, 4 (10th Cir. 2006) (dismissing complaint where prison investigated complaints and made reasonable responses).

The court understands that plaintiff did not want to enter protective custody because of an event and conditions he had heard about there, but "prison officials are not required to guarantee a prisoner's safety under terms and conditions dictated by the prisoner. A prisoner is entitled to adequate protection from harm, but is not entitled to direct prison officials on the means to accomplish it." *Hall v. Arnold*, 2007 WL 3399745, 4 (E.D.Ky. 2007); *Cf, Perkins v. Kansas Dep't of Corrs.*,165 F.3d 803, 811 (10th Cir.1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.") Accordingly, plaintiff's claims against defendants Peavler and Laun shall be dismissed.

**Defendants Bulmer and McKown**

Defendants Bulmer and McKown are the two guards who allegedly permitted entry into plaintiff's pod of the assailants who committed the second attack. Plaintiff has

14

not claimed that these guards would have seen the property claim or grievance noted above. Plaintiff has failed to show that either of these defendants had actual knowledge of a substantial risk of serious harm to plaintiff's safety. Nothing but speculation supports a claim that these defendants permitted the assailants entry into plaintiff's Pod knowing that those particular inmates posed "a pervasive risk of harm" to other inmates generally, or knowing that plaintiff had been specifically targeted by anyone.  Because plaintiff has given the court no reason to believe that he has a reasonable likelihood of mustering factual support for his claims against these two defendants, they shall be dismissed.

**Defendants Holthaus and Tinder**

The same is true for plaintiff's claims against his protective custody Unit Team counselor, defendant Holthaus, and his Unit Team Manager, defendant Tinder. Although plaintiff did not feel secure while in protective custody and alleges he was threatened with violence, the problems there are not alleged to be related to the prior assaults, nor is plaintiff alleged to have suffered serious harm while in protective custody.

Plaintiff contends that these defendants violated the Eighth Amendment by failing to stop threats and verbal harassment by other inmates when plaintiff was in protective custody following the second physical attack. Defendants rely upon 42 U.S.C.A. § 1997e(e), a provision of the Prison Litigation Reform Act  which prevents recovery of damages for emotional injury without a prior showing of physical injury. The Tenth Circuit has interpreted the language not as a bar to filing or pursuing a civil action for mental injury, but solely as a limitation on the remedies available. *Searles v. Van*

15

*Bebber*, 251 F.3d 869, 879, 880-81 (10th Cir.2001), *cert. denied*, 536 U.S. 904 (2002). *See Murray v. Edwards County Sheriff's Dept.*, 248 Fed.Appx. 993, 995, 2007 WL 2827723, 1 (10th Cir. 2007).

Nonetheless, these claims shall be dismissed as legally frivolous because, even assuming that verbal abuse may amount to cruel and unusual punishment in some cases, this case does not present such a situation. *See e.g., McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Barney v. Pulsipher,* 143 F.3d 1299, 1311 (10th Cir.1998) (severe verbal sexual harassment and alone are not sufficient to state a claim under the Eighth Amendment); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir.1992) (verbal harassment, without more, does not state an arguable constitutional claim); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (sheriff's threats to hang a prisoner were insufficient to state constitutional deprivation under § 1983); *compare Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir.2001) (finding the Eighth Amendment may be implicated by the infliction of psychological harm, such as where a guard labels an inmate a "snitch.") Accordingly, plaintiff's claims against any defendant based upon events occurring during his time in protective custody, or based solely upon emotional injuries, shall be dismissed.

Plaintiff additionally claims that defendants Holthaus, Peavler, and Tinder misled him to believe that upon his transfer to another prison, he would be placed in a particular program. This claim lacks the essential elements noted above of an Eighth

Amendment claim, as does plaintiff's complaint that more security alarms should be installed. Accordingly, these claims shall be dismissed.[6]

**Defendants Werholtz and McKune**

### Training

Defendants seek dismissal of plaintiff's claims that defendants Werholtz and McKune  failed to properly train subordinates in and enforce proper DOC procedures. Defendants fail to recognize that plaintiff's Amended Complaint voluntarily dismissed all failure to train claims. *See* Dk. 4, para. 32A ("All allegations regarding the act of "Training" is (sic) to be ommitted (sic).") [7]

### Failure to transfer/make policy

An Eighth Amendment claim can be made by showing failure to act despite one's knowledge of a substantial risk of serious harm. *See Farmer,* 511 U.S. 825. However, "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995). "A warden is not liable for an isolated failure of his subordinates to carry out prison policies, however-unless the subordinates are acting (or failing to act) on the warden's instructions." *Steidl v. Gramley*,  151 F.3d 739, 741 (7th Cir. 1998).

A plaintiff must allege in the complaint an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir.2001). Plaintiff's Amended

---

[6]Plaintiff appears to concede dismissal of defendants Holthaus and Tinder in his response. *See* Dk. 65, p. 23.

[7]Plaintiff's response confirms as much. *See* Dk. 65, p. 7,19.

Complaint alleges "personal involvement" of defendants Werholtz and McKune, and asserts claims against them based upon alleged acts taken and omissions made in their supervisory capacity. *See* Dk. 4 (para. 24A) (alleging that defendant Werholtz[8] was aware of a pattern, but failed to act and make policy for his subordinates to act, and was personally involved in the unconstitutional events); Dk. 4 (para 7, 25A) (alleging defendant McKune received plaintiff's grievance dated Jan. 14, 2005, three days before the second attack, was personally responsible but failed to act). To make such a claim, plaintiff must allege a causal connection or an affirmative link between plaintiff's constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993). See *Larson v. Meek ,* 240 Fed.Appx. 777, 780, 2007 WL 1705086, *3 (10th Cir.2007) (denial of grievances alone is insufficient to establish personal participation).

No plausible causal connection is included in plaintiff's amended complaint. Instead, plaintiff's allegations are conclusory and are unsupported by any particular facts sufficient to establish any of the elements of the Eighth Amendment claim. The same is true, assuming that plaintiff would amend his complaint to include the assertions made in his response. In his response, plaintiff attempts to make an affirmative link by showing that these defendants failed to timely transfer him to a safe place, and failed to establish policy regarding the obvious problems related to the "open entrance gate," which he alleges should have been locked but was unlocked for 20

---

[8]Plaintiff's response notes that he intended to include all supervisors in that claim as well. *See* Dk. 64, p. 3.

years, posing a continuous and serious security issue. *See* Dk. 65, p. 11. Plaintiff has

not made a plausible claim that the need for a different policy was so obvious, and the

inadequacy so likely to result in the violation of his constitutional rights, that defendant

Werholtz or McKune can reasonably be said to have been deliberately indifferent to the

need. This is particularly so, given plaintiff's recognition that the open entrance gate

policy had been in existence for 20 years, apparently without any perceived need for

change.

Nor do plaintiff's claims of untimely transfer meet the mark. Plaintiff's property

claim does not include a request for transfer but even had it done so, it would seem

unreasonable to require defendants to construe a property claim as a request for

transfer. Plaintiff's grievance does include a request for "out of state transfer for safety

reasons," but the grievance reflects that it was not received by the Warden's office until

January 25, 2005, at which point plaintiff was already in administrative segregation

pending review for protective custody, into which he was then placed. *See* Dk.1, Exh. A.

No prior request for transfer, or reason to transfer plaintiff known to these defendants

has been shown. Thus no deliberate indifference or personal participation of defendants

Werholtz or McKune has been properly pled.

**Due process /Equal protection claims**

Plaintiff's amended complaint includes due process and equal protection claims

under the Fifth and Fourteenth Amendment, as set forth in Count II.  Here, because

defendants' conduct is constrained by an explicit textual source of constitutional

protection- namely, the Eighth Amendment's prohibition against cruel and unusual

punishment-"that Amendment, not the more generalized notion of 'substantive due process,' must be the guide." *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1494 (10th Cir.1990). Whether plaintiff's claims are evaluated under the Eighth or Fourteenth Amendments, the standards for analysis to be applied are the same. *See e.g., Thompson v. Hamilton*, 127 F.3d 1109 (10th Cir. 1997).

In the alternative, to the extent plaintiff may have intended to state a procedural due process claim in addition to or in lieu of a substantive due process claim, that claim fails for absence of the essential elements. *See generally Sandin v. Connor*, 515 U.S. 472, 483-84 (1995); *Daniels v. Williams*, 474 U.S. 327, 31 (1986); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Plaintiff's equal protection claim also fails for failure to allege facts establishing the essential elements. *See generally Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir.1996). Plaintiff fails to allege any facts suggesting that he is a member of a suspect classification, that he was treated differently from other similarly-situated prisoners, or that defendants' acts did not serve a legitimate penological purpose, as is essential to state a claim under the Equal Protection Clause of the Fourteenth Amendment. Taking all well-pleaded facts in the complaints and their attachments as true, the plaintiffs have failed to present a plausible right to relief under these amendments. Accordingly, plaintiff's claims under the Fifth and Fourteenth Amendments shall be dismissed.

**Motions to compel**

Plaintiff has recently filed two documents docketed as motions to compel. Dk. 68,

Dk. 70. The first motion moves the court to compel defendants to accept waivers of service for defendants Bulmler and McKown, who were identified as "John Doe" defendants in plaintiff's complaint and amended complaint. The court assumes, arguendo, that plaintiff's claims against these defendants pass the screening pursuant to § 1997e, and the court substitutes these defendants for the John Doe defendants in plaintiff's amended complaint. The court nonetheless finds that no waiver of service is necessary for these defendants because counsel has entered an appearance on their behalf and has included them in defendant's motion to dismiss.[9] In the alternative, the court denies this motion as moot, given its ruling dismissing these defendants from the case.

Plaintiff's second motion to compel asks the court to require prison officials to prepare a more complete *Martinez* report. The plaintiff's objection misinterprets the purpose of a *Martinez* report. "The purpose of a Martinez report is simply to give the trial court sufficient information for the orderly consideration of issues." *Davis v. McKune*, 16 F.3d 415 (Table),  1994 WL 7106, 1(10th Cir.1994). A *Martinez* report is often necessary in pro se cases such as this to develop a record sufficient for the trial judge to ascertain whether there are any factual or legal bases for the prisoner's claims. *Hall v. Bellmon*, 935 F.2d at 1109 (10th Cir.1991). *See generally Martinez v. Aaron*, 570

---

[9]*See* Fed.R. Civ. Pro 4(e), providing that, unless federal law provides otherwise, an individual may be served in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Kan. Stat. Ann. 60-203 (c) provides that "[t]he filing of an entry of appearance shall have the same effect as service."  A formal entry of appearance is not required. *See* D. Kan. Rule 5.1(d) (providing that counsel may make an entry of appearance by "signing the initial pleading, motion or notice of removal filed in the case.")

F.2d 317, 319 (10th Cir.1978) (holding that report is necessary to determine "preliminary issues including those of jurisdiction").

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Dk. 44) is granted.

IT IS FURTHER ORDERED that plaintiff's motions to compel (Dk. 68 and 70) are denied, and that plaintiff's motion to reconsider (Dk. 56) is denied.

Dated this 25th  day of April, 2008.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge